# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2287 | **DATE** | 9/23/2003 |
| **CASE TITLE** | Jeffrey Newman vs. Corn Products Intl, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum Opinion and Order. For the reasons set forth, defendants' motions for summary judgment are granted and judgment is entered in favor of the defendants. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | SEP 25 2003 date docketed | | |
| ✓ | Docketing to mail notices. | | | 65 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | TP — courtroom deputy's initials | 03 SEP 24 AM 10:49 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY NEWMAN | ) | |
| Plaintiff. | ) ) ) | |
| v. | ) ) | No. 00 C 2287 |
| CORN PRODUCTS INTERNATIONAL, INC. and OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, LOCAL 7-507 and INTERNATIONAL ASSOCIATION OF MACHINISTS DISTRICT NO. 8 | ) ) ) ) ) ) ) ) | Judge John A. Nordberg |
| Defendants. | ) | |

SEP 2 5 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffrey Newman brings this action pursuant to §301 of the Labor Management Relations Act, 29 U.S.C. § 1985. Two prior rulings of this Court have narrowed the case down to one issue. Before the court are motions for summary judgment filed by Newman's employer and union. For the reasons set forth below, the motions are granted.

## BACKGROUND

Plaintiff Jeffrey Newman worked for defendant Corn Products International, Inc. ("Corn Products") at its plant in Bedford Park, Illinois. Corn Products is a corn refiner that produces food ingredients and industrial products derived from the wet milling and processing of corn. Newman worked in the Hydrate Dextrose Unit at the Bedford Park plant and was also a member of the bargaining unit represented by defendant Union, which had entered into a collective bargaining agreement with Corn Products.



On November 24, 1998, plaintiff left the plant at 2:11 p.m. Corn Products later concluded that he left the building before the end of his shift without permission and without completing his assigned task. As a result, on December 3, 1998, it suspended him for five days pending discharge and then, on December 7th, fired him. Although the details are not important for this motion, plaintiff believes that he had a right to leave the plant early under a "long and onerous" hours provision under the collective bargaining agreement and that his firing violated this agreement.

At issue in the current motions is whether Corn Products complied with Article 23 of the collective bargaining agreement, which requires that any discipline be imposed within a 7-day time period. Specifically, Article 23 states: "Any employee violating any part of this agreement shall be subject to disciplinary action. Such discipline shall be within seven (7) scheduled and worked days of the incident . . . . The seven-(7) day period shall be calculated by counting the workday of the incident as day one (1)."

As will be discussed below, there is a dispute over how to interpret the phrase "scheduled and worked days" and how to determine whether a day is "scheduled." But there is no dispute as to which days plaintiff actually worked and which days he was scheduled *ahead of time* to work. The incident took place on November 24th and is thus counted as day 1. On the next two days (Nov. 25th and 26th), plaintiff was scheduled to work and in fact did work. On the two days thereafter (Nov. 27th and 28th), plaintiff was off. On the two days thereafter (Nov. 29th and 30th), he was not scheduled to work but was called into work and did work. On the three days thereafter (Dec. 1st, 2nd, and 3rd), he was scheduled to work and did work. A question thus

arises whether to count November 29th and 30th – the days in which he was not scheduled ahead of time to work but was called in to work – in computing the 7-day period. If those days are included in computing the 7-day period, then the company issued the discipline too late. If not, then the company did not violate Article 23.

Plaintiff's union filed a grievance and elected to take plaintiff's claim to arbitration, something which it does not do in every case. The arbitration hearing took place in December 1999 – a little over a year after the incident. Ester Foster, who is not a lawyer, represented plaintiff in this hearing. She is the Union International Representative and is responsible for arbitrating the majority of the Union's arbitrations.

Foster conferred with plaintiff several times in preparation for the arbitration. Plaintiff asserts that he talked to her twice – in a face-to-face meeting July 1999 and a telephone conversation on December 9, 1999, the night before the hearing. In the July meeting, Foster showed plaintiff a list of questions that she was planning on asking him at the hearing. The meeting lasted for approximately five and a half hours. Newman claims that, during this meeting, he reviewed with Foster in great detail why he believed that the discipline was untimely under Article 23.

The arbitration hearing took place on December 10, 1999. On the morning of the 10th, Newman and Foster (and others) assembled in a room while waiting the beginning of the hearing. While they were waiting, Foster allegedly stated: "I'm going to drop a bombshell on their ass . . . . there's no such thing as working and not scheduled. That will get 'em."

At the arbitration hearing, Foster argued the merits of the dispute as to whether the suspension and termination were justified and she also raised for the first time the argument that

the discipline was untimely under Article 23 of the collective bargaining agreement. Corn Products objected on the ground that the argument had been waived because it had not been raised before the hearing. After the hearing, the Union and Corn Products submitted post-hearing briefs to the arbitrator, in which they both argued (among other things) the timeliness argument under Article 23.

The arbitrator issued a written decision in which he rejected plaintiff's arguments on the merits, finding that the company was justified in firing him for leaving work early. The arbitrator also ruled on the timeliness issue. He first concluded that the argument had been waived but then went on to consider it on the merits in the alternative. His ruling on this particular issue is as follows:

> The threshold issue in this case concerned the question of whether or not the discipline issued to Newman was timely given. This issue was raised by the Union for the first time at the arbitration hearing. It was not argued in the grievance itself, nor at the two disciplinary meetings held on December 3rd and 7th of 1998. As such, the argument must be waived because parties have a duty to express their arguments during the lower steps in the grievance procedure. [footnote omitted.] This is because there may be a need to prepare for arbitration and preparation is based upon issues already expressed. Thus, arguments that are raised for the first time in arbitration are deemed to be a surprise.
>
> However, even assuming *arguendo* that the timeliness issue was somehow not waived, it would nevertheless be invalid. Article 23 of the parties' collective agreement states in part that discipline shall be issued ". . . within seven(7) *schedule and worked days of the incident*" [emphasis in original]. The incident in question occurred on November 24, 1998. Counting November 24th [as the parties' contract requires], Newman was also scheduled and worked on November 25, 26, December 1, December 2, and December 3, 1998 (Company Ex. 4). He was not scheduled and did not work on November 27, 28, 29 and 30th (Company Ex. 4). Thus, the discipline was issued within six scheduled and worked days of the incident in question. [Footnote 10].

> [Footnote 10]: Even assuming, for the sake of the argument, that Newman may have worked on one or more of the non-scheduled days, there is still the requirement, in the conjunctive, that the time counted i[s] both "scheduled **and** worked."

(Arbitrators' Decision at 9-10; emphasis in original.)

## PROCEDURAL HISTORY

Plaintiff filed this lawsuit on April 13, 2000, asserting that the Union failed to adequately represent in him in the arbitration hearing. The defendants filed motions to dismiss, arguing that the Union's alleged failures of representation were irrelevant in light of the way the arbitrator ruled. On November 30, 2000, this Court issued a minute order denying the motions to dismiss. In this order, we concluded that the alleged failures of the Union to challenge the legitimacy of the firing had no effect on the outcome given the arbitrator's decision.[1] However, we held that the alleged failure to raise the timeliness defense potentially could state a claim if plaintiff developed further facts.

Defendants tried a second time, filing a motion for judgment on the pleadings in which they argued that the arbitrator had rejected the timeliness argument in an alternative ruling. Therefore, they argued, any failure to raise that argument earlier was immaterial. We denied the motion, noting that plaintiff should receive the benefit of the doubt at this preliminary stage of the proceeding. Although we let the case go forward, we indicated that, given the arbitrator's ruling, plaintiff needed to point to some strong evidence that would have been able to change the arbitrator's mind on the timeliness question.

---

[1]Specifically, plaintiff argued that (i) the Union failed to submit evidence that Plaintiff had worked "long and onerous" hours and was entitled to leave under the contract and (ii) the Union failed to submit evidence that plaintiff left only 15 minutes early.

## SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the Court may grant summary judgment only if the factual record shows that no genuine issue of material facts exists and the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In evaluating the motion, the court must draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Hamm v. Runyon*, 51 F.3d 721, 724 (7th Cir. 1995). The central inquiry is whether the evidence is so one-sided that no reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

## DUTY OF FAIR REPRESENTATION[2]

In a "hybrid" claim under Section 301, the claims against the union and employer are interdependent; the employee cannot prevail on either unless he shows the union violated its duty of fair representation. *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 913 n.2 (7th Cir. 1999). "A union breaches its duty of fair representation when its actions are arbitrary, discriminatory, or in bad faith." *Filippo v. Northern Indiana Public Service Corp.*, 141 F.3d 744, 748 (7th Cir. 1998 (a tripartite standard). The bad faith and discrimination prongs require an examination of the union officials' subjective motivation; the arbitrariness prong requires an evaluation of the objective adequacy of the union's actions. *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1243 (7th Cir. 1997). A union's actions will be deemed arbitrary only if the union behaves in a manner so outside the bounds of reasonableness as to be irrational. *Id.* In addition, the plaintiff must show that he was actually injured by the union's actions; a union's error will only

---

[2]This summary of the legal standard is taken from our earlier ruling on the motions to dismiss.

be deemed a breach of duty if the correct action would have brought about a different result. *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1176-77 (7th Cir. 1995).

## DISCUSSION

Plaintiff thus must overcome two hurdles – proving defective representation and then prejudice. Defendants argue that plaintiff cannot meet either requirement. As for the adequacy of representation, it is undisputed that the Union failed to raise the timeliness argument and that this failure resulted in the argument being waived. Defendants respond generally that the Union provided effective representation and that it did not raise the timeliness argument earlier because it was "a weak, almost desperate claim with very little likelihood of success" and that the only reason Foster actually raised it at the hearing was because plaintiff had no other good arguments. Plaintiff disputes these characterizations and asserts that the timeliness argument was a reasonable one. He points to, among other things, the comment by Foster on the day of the hearing that she would "drop a bombshell" on them by raising the timeliness argument. Plaintiff complains that, although Foster did raise the timeliness argument, she did so too late causing it to be waived and she failed to support it with proper evidence.

Although we find that it is doubtful whether the Union's representation was "so far outside a wide range of reasonableness as to be irrational," *Garcia*, 58 F.3d at 1176-77, we are willing to give plaintiff the benefit of the doubt and assume for purposes of this motion that he could convince a reasonable jury that the Union's representation on this particular point was arbitrary.[3] We do so because it is clear that there is not enough evidence to suggest that the result

---

[3]In his response brief, plaintiff advanced for the first time an argument that the Union's actions were in bad faith and discriminatory. Even if we overlooked plaintiff's tardiness in raising this argument, we would conclude that there is insufficient evidence to support it.

would have been any different if the Union had raised this issue earlier or if Foster had presented additional evidence at the hearing.

As noted above, the arbitrator concluded that plaintiff had waived the timeliness argument by only raising the argument for the first time at the arbitration hearing and by not raising it earlier in the grievance procedure. Although the arbitrator ruled that the argument had been waived, he nonetheless went on to state that it had no merit in any event. He concluded that the discipline had been imposed within 6 days. This conclusion was based on the assumption that plaintiff had not worked on the critical two days – November 29th and 30th. However, in footnote 10, the arbitrator recognized the possibility that plaintiff may have worked one of those days and then concluded that the result be the same if he had worked those days because "there is still the requirement, in the conjunctive, that the time counted i[s] both 'scheduled **and** worked.'" (Emphasis in original.)

It is thus clear that the arbitrator unequivocally rejected the interpretation of Article 23 being offered by plaintiff. He stated that a day must be both "worked and scheduled" in order to be counted. Given this holding, plaintiff faces an uphill battle and may not simply present a colorable argument or different interpretation but must point to strong and concrete evidence that would be enough to convince the arbitrator to change his mind.

Plaintiff offers a number of different arguments but none of them are compelling. Plaintiff first states that the arbitrator assumed that he did not work on the 29th and 30th and faults the Union for not introducing his time sheets as evidence that would have conclusively proven that he did work those days. However, as noted above, this failure is immaterial because the arbitrator went on to state in footnote 10 that the result would have been the same even if

-8-

plaintiff had worked one or more of these days. The submission of his time sheets therefore would have made no difference.

Plaintiff next suggests that the arbitrator did not carefully consider the argument because he had already concluded that it had been waived. This point has little probative value. The Union raised the timeliness argument at the hearing and then the parties addressed it again in post-hearing briefs. The arbitrator was thus well aware of the parties' arguments. Moreover, the arbitrator made the decision to address this argument in his written ruling when he easily could have left it out. The fact that he made this effort shows that he took the argument seriously. We cannot assume, based simply on the fact that the decision is an alternative holding, that it was not a sincere one.

Plaintiff finally attempts to argue that the arbitrator would have ruled differently if the Union representative had made a more forceful argument and presented additional evidence and witnesses. Other than the time sheets, plaintiff has not pointed to any documentary evidence that should have been introduced.

Plaintiff mostly focuses on textual arguments and inferences that he believes supports his interpretation of Article 23. For example, he points to the sentence in Article 23 stating that the date of the incident shall be counted as the first day in calculating the 7-day period and notes that this day could be either a scheduled or worked day. Assuming that this argument was not raised to the arbitrator in the post-hearing briefs, we find that it would not have changed the result. In fact, it seems to cut the other way. Rather than shedding light on the meaning of the phrase "scheduled and worked," this sentence is addressing a common latent ambiguity in agreements as to when a particular time period starts. Here, the sentence makes it clear that the first day of the

period is the date of the incident. It thus says nothing about how to interpret the phrase "scheduled and worked." If anything, this sentence is better viewed as an exception to the more general rule of the paragraph, which is that days must be both "scheduled and worked" to be counted in the analysis.

Plaintiff also points to a portion of testimony from Jerome Fleming, who was a former Chief Steward of the Union, that he believes supports his claim that a day should be considered scheduled when a worker is called into work on what was a previously unscheduled day. The problem with this argument is that Fleming's testimony is ambiguous. Moreover, even if it were not, all of the other witnesses stated that they had never heard of anyone interpreting Article 23 in the way plaintiff was interpreting it. For example, Foster stated that "[t]here's never been a situation where [Article 23] has been interpreted that way." (Foster Dep. at 70, 75.) Likewise, Gina Perry testified that it was her understanding that off days that were worked on overtime did not count as days "scheduled and worked." (Perry Dep. at 153.)

Plaintiff's interpretation is also one that unnaturally contorts the normal meaning of the word scheduled. His position is that, although there is schedule of work days, the term "scheduled" means both days that are scheduled ahead of time *and* days that were previously unscheduled but which are actually worked by the person. In effect, he is arguing that those days retroactively become scheduled days. This interpretation is an odd way to define "scheduled." Moreover, it would render the phrase "scheduled and worked" superfluous. If all worked days retroactively turn into scheduled days after the fact, then the drafter of Article 23 could have said "scheduled **or** worked" days or even simply "worked" days? The more logical and natural interpretation of the phrase "scheduled and worked" is the one adopted by the arbitrator.

In sum, we find that plaintiff's interpretation of Article 23 has only weak textual or logical support. Moreover, plaintiff has not pointed to any significant evidence that was not already presented to the arbitrator and that would be enough to change his mind.[4] Even if we gave plaintiff every benefit of the doubt and assumed that his interpretation was a possible one, the arbitrator still ultimately would have to pick which interpretation is right. There is simply no evidence to suggest that the choice he already made would have been different.[5]

## CONCLUSION

For the reasons set forth above, defendants' motions for summary judgment are granted and judgment is entered in favor of the defendants. All other pending motions are moot.

ENTER:

JOHN A. NORDBERG
Senior United States District Court Judge

DATED: September 23, 2003

---

[4] It is important also to recognize that the company was at an equal disadvantage in the hearing with regard to this issue and that, in any subsequent hearing, the company would be able to raise additional arguments and present additional evidence and witnesses just as plaintiff would.

[5] As noted above, we previously narrowed this dispute down to the timeliness issue. Plaintiff has nonetheless attempted to argue that the Union failed to present an adequate defense on the merits of his firing. We find nothing in what plaintiff has presented that would change our earlier ruling that these alleged failures are immaterial in light of the arbitrator's ruling.